UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DARRELL CHAMBERS, | ) | 1:08-CV-00187 OWW JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| W.J. SULLIVAN, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

      Petitioner Darrell Chambers ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**<u>PROCEDURAL HISTORY</u>**

      Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at the California Substance Abuse Treatment Facility in Corcoran, pursuant to a judgement of the Los Angeles County Superior Court. (Pet. at 2; Court Doc. 10). Petitioner was convicted by a jury on May 8, 1984 of second degree murder. (Answer at 1). Petitioner is currently serving a sentence of fifteen years to life. (Pet. at 2).

      Petitioner does not challenge his conviction; rather, he contends that the denial of a parole release date by the California Board of Parole Hearing (the "Board") violates his constitutional rights. (Pet. at 5). The Board held a hearing in June 2005, during which the Board determined that Petitioner was unsuitable for parole

      Subsequently, Petitioner file a petition for writ of habeas corpus with the Los Angeles County Superior Court on May 12, 2006, challenging the Board's decision. (Pet. at 3-4). The Superior

Court, in the only reasoned State court decision issued in this case, denied Petitioner's request for relief on July 23, 2007. (*See* Answer Ex. 2).

Petitioner subsequently sought habeas corpus relief before the California Court of Appeal on October 22, 2007. The California Court of Appeal summarily denied the petition on November 2, 2007. (Answer Ex. 4).

On November 13, 2007, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. (Answer Ex. 5.) The California Supreme Court summarily denied the petition on January 16, 2008. (Answer Ex. 6).

On February 7, 2008, Petitioner filed the instant federal petition for writ of habeas corpus. (Court Doc. 1). The petition alleges several violations of Petitioner's right to due process of the law stemming from the Board's denial of parole in 2005.

On June 16, 2008, Respondent filed a response to the petition.

On July 25, 2008, Petitioner filed a reply to the Respondent's answer.

## DISCUSSION

### I. Jurisdiction and Venue

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. While Petitioner's custody arose from a conviction in the Los Angeles County Superior Court, he is currently incarcerated in Kings County, which is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in the district court where Petitioner is currently incarcerated, the Court has jurisdiction over and is the proper venue for the instant action. *See* 28 U.S.C. § 2241(d).

### II. ADEPA Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499

(9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in July 2008 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

While Petitioner is not challenging the underlying state court conviction, Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition since he satisfies the threshold requirement of being in custody pursuant to a state court judgment. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant

the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Furthermore, AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

### III.   Review of Petitioner's Claim

Petitioner sets forth three grounds for relief, all stemming from the Board's denial of parole. Specifically, Petitioner contends in his first ground for relief that the Board's continued reliance on his commitment offense violates his Due Process rights. Second, Petitioner argues that the Board's denial of parole was illegally based on disciplinary infractions occurring over fifteen years prior to the Board's hearing. Petitioner's last ground for relief does not allege an independent basis for relief; rather, Petitioner contends in this claim that the trial court's decision was not supported by the evidence presented and contrary to State and Federal law.

### *A. Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). In the briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole. The Ninth Circuit has consistently held that a prisoner possesses a liberty interest in parole where mandatory language in a state's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting in California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see McQuillion*, 306 F.3d at 903; *see also Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as a petitioner's Due Process rights are not violated by the denial of a liberty interest where the denial follows the state's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent argues due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. This contention is based on the argument that the "some evidence" standard does not constitute clearly establish Federal law as it has not been applied to denials of parole by the United States Supreme Court. Respondent is correct in asserting that, notwithstanding a prisoner's liberty interest in a parole date, a parole release determination is not subject to all safeguards of an adversarial proceeding. *Pedro v. Oregon Parole Board*, 825 F.2d

1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). At a state parole board proceeding, an inmate is entitled to receive advance written notice of a hearing. *Pedro*, 825 F.2d at 1399. Additionally, the inmate must be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16. Here, the Court notes that Petitioner does not allege that he was deprived of any of these rights.

However, the Ninth Circuit has consistently recognized that due process mandates an additional procedural safeguard–specifically requiring that the Board's decision be supported by "some evidence." *See Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill*, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Thus, the Court finds that the "some evidence" standard is applicable and the dispositive inquiry now before this Court is whether "some evidence" supports the Board's finding that Petitioner posed a current danger to the public at the time of his parole hearing.

The Court's inquiry is framed by the state's statutes and regulations governing parole suitability determinations. *Irons*, 505 F.3d at 851; *Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such

that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. California's regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime," among several other factors.[1] Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; and (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

The California Supreme Court recently reiterated that the aggravated circumstances of the commitment offense may serve as a basis for denying parole but limited consideration of this factor. *In re Lawrence*, 44 Cal.4th 1181,1214 (Cal. 2008). The *Lawrence* court further clarified that some evidence is met by the Board's reliance on immutable facts, such as an inmate's criminal history or the commitment offense, only where those facts support "the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety." *Id*. at 1221 (emphasis in original) (holding that the relevant inquiry before a reviewing court is whether some evidence supports the decision

---

[1] The statute specifically states, "All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Cal. Code Regs., tit. 15, § 2402(b).

that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the Board's factual findings). Noting that "all of the information in [the] postconviction [sic] record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety," the California Supreme Court found that the commitment offense was not probative of petitioner's current dangerousness. *Id*. at 1226-1227; *but cf. Shaputis*, 44 Cal.4th at 1260 (holding that immutable factor of commitment offense, when combined with a failure to gain insight and understanding into the crime, provides some evidence of current dangerousness).

### *B.     State Court Decision and Petitioner's Due Process Claims*

In the only reasoned State court decision issued in this case, the Los Angeles County Superior Court upheld the Board's denial of parole. The California Court of Appeal and California Supreme Court issued summary denials of Petitioner's request for habeas corpus relief. When reviewing a state court's summary denial, the Court "look[s] through" the summary disposition to the last reasoned decision. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court is presumed to have adjudicated Petitioner's claim for the same reasons cited by the Los Angeles County Superior Court in their reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. at 803.

The State court examined three factors cited by the Board in its denial of parole–namely, the commitment offense, the lack of suitable parole plans, and Petitioner's prison disciplinary record. While the Superior Court found that the Board's decision was supported by some evidence, the court also found the Board's reliance on unsuitable parole plans was erroneous. The Superior Court decision rested on the evidence supporting the Board's findings with regards to the commitment offense and disciplinary record. Petitioner challenges the state court's findings, arguing that there does not exist some evidence to support its conclusion. While the Court is wary of the standard applied by the trial court, namely applying the "some evidence" standard specific unsuitability factors rather than the ultimate conclusion of suitability, the Court's *de novo* review of the constitutional issue reveals that Petitioner's Due Process rights were not violated. *See Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (citing to *Lockyer*, 538 U.S. at 71, for the proposition that

federal habeas courts are not required to adopt one methodology or another in deciding whether a state court decision is contrary to or an unreasonable application of clearly established Federal law; thus, a federal habeas court could review the constitutional question *de novo* first, especially where doing so would provide insight into whether the state court's decision was contrary to or an unreasonable application of clearly established Federal law).

### C. Merits of Petitioner's Due Process Claim

Unlike in *Lawrence*, where the petitioner's post incarceration record was devoid of any serious discipline, Petitioner's post incarceration disciplinary record contains a violent altercation. *See Lawrence*, 44 Cal.4th at 1194. Petitioner's violent misconduct while incarcerated indicates that the commitment offense is probative value of Petitioner's dangerousness. *See id*. at 1214. Thus, even under *Lawrence*, the use of Petitioner's commitment offense to meet the "some evidence" test does not violate Petitioner's right to due process of the law.

The Board correctly relied on the commitment offense in finding that it was probative of Petitioner's current dangerousness. State regulations provide that, in determining whether the commitment offense was "especially heinous, atrocious or cruel," the following factors may be considered: the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense. Cal. Code Regs., tit. 15, § 2402(c)(1). Here, the Board found, and Petitioner does not dispute, that the commitment offense was especially egregious as it was committed in a dispassionate and calculated manner and the motive for the crime was trivial compared to the crime. The facts as read into the record of the hearing revealed that Petitioner saw the victim walking down a street, stalked and followed the victim, and then shot him in the back of the head without uttering any warning to the victim. This "execution style murder" was motivated by the killing of Petitioner's "homeboy." However, Petitioner admits that the only connection the victim had to the killing of his friend was the victim's membership in the same gang as the individual whom Petitioner believed to be responsible for the killing. Thus, the trivial and calculated nature of the crime permits the finding

that the crime was especially heinous, atrocious, or cruel.

While the Board relied mainly on Petitioner's commitment offense, Petitioner's previous disciplinary violation while incarcerated was also probative of Petitioner's current dangerousness to society. Consideration by the Board of this factor is permitted under Title 15 of the California Code of Regulation section 2402(c)(6), which labels serious misconduct by a prisoner while incarcerated as a circumstances tending to show unsuitability. Section 22402(c)(6) does not set a limit on how long a serious misconduct may be considered as an unsuitability factor. The Court agrees with the Superior Court that past misbehavior does become irrelevant to parole suitability after a certain period of time. However, the violent nature of the post incarceration misconduct leads to the Court to find that the misconduct while incarcerated was probative of current dangerousness.

More importantly, the Court notes that the "some evidence" standard is minimal, and is meant only to "[assure] that 'the record is not so devoid of evidence that the findings of...[the] board were without support or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). The egregious nature of the commitment offense and Petitioner's prison disciplinary record constitute sufficient evidence to meet this minimal standard of judicial review. Consequently, the Court does not find that Petitioner's Due Process rights were violated and he is not entitled to federal habeas relief.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.

The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    May 20, 2009**                                  /s/ John M. Dixon
                                            UNITED STATES MAGISTRATE JUDGE